*PIGNATEL* vs. *DROUET.*

APPEAL from the court of the first district.

PORTER, J. delivered the opinion of the court. The plaintiff and defendant by act *sous seing prive*, of date the 5th March, 1827, entered into an agreement by which they stated, that the defendant had purchased five lots from the plaintiff such as they were, with the buildings thereon, situated in the fauxbourg La Fayette, parish of Jefferson, for the price and sum of $3,200, and that the sale would be passed by public act, (*au greffe*) as soon as the plaintiff would receive from one M'Dougald, of Baton Rouge, to whom he had previously sold, an act annulling the title vested in the latter; and if M'Dougal did not pass such an act, the defendant was to wait until the plaintiff could comply with the necessary formalities to enable the sheriff to make a title. The conditions were two notes, one payable in June, 1827, and the other in March, 1828.

The petition sets out this agreement, designates particularly the lots sold—states that a rescision of the sale to M'Dougald had been obtained from him; that he was willing and ready to pass to the defendant a clear and unin-

*A sous seing prive* not made double forms a commencement of proof in writing.

A commencement of proof in writing, is presented by every instrument which requires parol evidence to establish its reality. And therefore, where the contract is for land, if the agreement has been reduced to writing, proof of its being signed by the parties, may be given by parol, tho' it was not made double.

A sale *sous seing prive* is obligatory, tho' in the agreement the parties promise to pass their contract before a notary, and that promise is not complied with.

cumbered title to the premises, but that the lat- ter had refused to accept it or comply with his agreement.

It concludes by a prayer that the property mentioned should be decreed to belong to the defendant, and that he should be decreed to be the debtor of the petitioner in the sum of $1600 payable in June, 1827, and 1600, payable in March, 1828.

The defendant pleaded, that if such an instrument of writing could be produced, as was stated in the plaintiffs petition, it still had no effect in law; and altho' the respondent had the intention to acquire the property in plaintiff's petition mentioned, yet as the plaintiff delayed to make a title, and was unable to do so, the respondent was compelled to purchase other property for the immediate use of his family.

And further, that the plaintiff was not the owner of the property mentioned in the petition—that he could make no title to the same; and moreover, that it was incumbered by mortgages.

The district court decreed, that the plaintiff should recover as he had prayed in the petition, but that he should not have the benefit of the

judgment until he made to the defendant a clear and unincumbered title to the premises.

From this judgment the defendant has appealed, and in this court has relied on the following grounds for its reversal.

1st. That the agreement was a synallagmatic one, executed under private signature, and that as there was not as many originals as there were parties, it is not binding.

2d. That the act on which suit is brought does not establish a sale, but contains a promise to sell, with the further clause that the sale is to be executed by an authentic act, and that until that is done either party may retract.

3d. That the plaintiff did retract, and if he did not, there was such unreasonable delay in carrying into effect his agreement to pass a sale by public act, that the defendant was not obliged to accept it at the period it was tendered.

4. That the property was incumbered by mortgages: that this circumstance was unknown to the appellant at the time he entered into the agreement, and authorises him to refuse a compliance with his contract.

I. The agreement on which this suit is brought, was entered into since the passage of he amendments to the civil code, and since

the publication of those amendments, and a
portion of the old code, under the title of "The
Civil Code of Louisiana." The compilers of
the last mentioned work have left out of it those
articles in the old code which contained provi-
sions in relation to the perfection of synallag-
matic agreements. But the defendant con-
tends, that their failure to insert them does not
repeal the former law, and he has relied on a
decision of this court in the case of *Flower* vs.
*Griffith*, *ante* 89, by which we held, that the
omission to reprint the last title of the first
civil code, could not be considered as abroga-
ting it.

This court did so decide in the case alluded
to. In that instance, however, there was no-
thing to shew either in the law as printed, the
amendments engrossed in the office of the Se-
cretary of State, nor in the report made to the
Legislature that there had been any thing done,
from which a repeal or even an intention to re-
peal the omitted title could be inferred. In
the case before us, it is seen from the report of
the jurists appointed to draw up the amend-
ments to the code that they recommended the
suppression of these articles as useless, and
tending to promote the evils they were intend-

Eastern Dist.
*Feb'ary*,1828.

PIGNATEL
*vs.*
DROUET.

ed to guard against. Whether this recommen-
dation, coupled with the knowledge we possess
of the manner in which this report was acted
on, and the fact of their not being reprinted,
would authorise a court of justice to conclude,
that there was a repeal of them, our opinion of
the case, supposing it to be governed by the old
code, dispenses with the necessity of deciding.

It has been declared by this tribunal in more
than one instance, that a failure to comply
with the provisions of the civil code which re-
quired as many originals, as there were parties,
for the validity of acts *sous seing prive*, eviden-
cing synallagmatic agreements, did not render
them null and void—that they were still good
as a commencement of proof in writing. It is
deemed unnecessary to go again into the rea-
sons which brought us to that conclusion, or to
advance others in support of it which the sub-
ject fruitfully suggests. *Vol. 3d.* 81, *vol, 4th*,
200.

Its correctness has not indeed been impugn-
ed, but it has been strenuously contended that
this case offers a complete exception to that
principle, because the contract being for immo-
veable property, the sale of which cannot be
proved by parol, it follows as a consequence,

that the commencement of proof in writing cannot be eked out, and made complete by oral testimony. That the prohibition in the law extends to the part, as well as the whole.

If the words *commencement of proof in writing* meant alone a proof, not of the whole matter that was alleged against the party to whom it was opposed, but of something which led to, or made a part of it, then this reasoning would be entitled to all the weight which the counsel seemed to consider due to it. But these expressions in our law have a much more extensive sense than that which this argument ascribes to them. They apply to every instrument which does not make proof in itself of its existence, and the truth of the facts therein set forth; to every act which parol evidence is required to establish—in one word, to all instruments that are not authentic. Without the sanction and command of positive authority, no writing would establish by itself the truth of what it contained, nor of the hand that traced its characters, nor of the time in which it was executed. The legislatures of most countries to avoid the difficulties this principle would produce in its application to the transactions of society, and to simplify the proof of con-

tracts, have declared, that acts passed before public officers if clothed with certain formalities shall prove themselves. ·All instruments which do not come within the provisions that confer this authenticity, remain within the operation of the doctrine just stated—they require other evidence to establish their validity, they are therefore not proof, but a commencement of proof, as the modern French jurists call them; or in the language of the roman civilians, *semiplenam probationem.—Toullier Droit civil, vol. 9, chap. 6, no. 61. Mascardus de prb vol 1, p.* 38.

It was necessarily in this understanding of these words that this court said in the cases already cited, that a *sous seing prive* not made double, formed a commencement of proof in writing; for the instruments on which those suits were brought, contained within themselves every thing necessary to shew a legal contract. The evidence required to make them complete, was not to prove that other matters than those expressed in the act were agreed on: but that the writing which was presented as the evidence of the agreement, was the act of the parties whose signatures were affixed to it.

Eastern Dist.
Feb'ary 1828.

PIGNATEL
vs.
DROUET.

**II.** Being thus of opinion, that the instrument sued on was not void, but on the contrary formed such a commencement of proof, as enabled either party to establish its existence by parol evidence, there is next to be considered the objection;—that it was nothing more than a promise to sell, with an agreement to reduce that sale to writing by public act, and until that was done, either party might retract. In support of that position, we have been referred to a passage in *Febrero,* which correctly states as the former law of this country, that a sale may be made either by parol, or in writing, but that where it is agreed there shall be a sale in writing, it is not perfect until the writing is executed, and either party may retract; the promise to sell being one thing, and the other the completion of the contract. Whether the provision in our code which declares, that a promise to sell amounts to a sale, has not in some measure changed this doctrine, in relation to that species of property the alienation of which may be proved by parol, need not be enquired into; because in this instance the agreement was reduced to writing, and the authority quoted applies only to cases where the contract is verbal. Upon this ground therefore, the defendant had

no right to retract, and he had none upon the other position advanced in the argument, that this was a promise to sell, and that acts were committed by the vendor which authorised him to refuse to make the contract complete. The instrument which they signed was not a promise to sell, but a sale. This assertion requires no other, and can receive no greater, support, than that which the act itself furnishes. It begins in these words, *"nous somme convenus entre Lazarre Pignatel et Jean Babtiste Drouet d'un commun accor que le sieur Jean Baptiste Drouet a acheté au sieur Lazare Pignatel cinq terrains tels qu'ils se comportent avec toutes les batisses qui se trouvent dessus. &c. &c."*

These expressions altho' awkward and ungrammatical, leave no doubt on the mind that there was a sale, and the further stipulation contained in the instrument, that a public act should be made of the contract, as soon as the vendor could obtain a rescission by suit, or otherwise, of the sale previously given to M'Dougal, does not turn it into a mere promise to sell. It is confounding two things entirely distinct, to assimilate a promise to sell, and reduce that sale to writing; with a sale *sous seing prive,*

containing an agreement that there shall be hereafter a public act. In the latter, where, as in this instance, there is thing, price, consent, and words amounting to an alienation, the parties are as much bound by the act under private signature as they would be by one passed before a notary. The agreement to give their contract greater publicity, either by registering it, or by passing it in the form of an authentic act, does not change or alter the substance of the contract. Nor does the failure to do so annul it. Hence *Portalis* in reporting the title of sale of the Napoleon code, from which that of our's is principally taken, says *"on a juge constamment qu'une vente sous seing prive etait obligatoire quoique dans l'acte on se fut reserve de faire rediger ses accords en acte public, et que cette reserve n'eut jamais eté realisee. Code civil avec les discours, rapports et opinions, vol.* 4, 258. *Cinq codes, no.* 1582, *code civil, note* 2.

Being therefore of opinion there was a sale by the act under private signature, it is unnecessary to examine at length the other questions raised, as to the parties having retracted, and the length of time that elapsed before the vendor was ready to make the public act.

Eastern Dis.
Feb'ary 1828.

PIGNATEL
vs.
DROUET.

And as to the right to resist the execution of the contract because there were mortgages on the property given, both before and after the date of the *sous seing prive*: they do not form in themselves a ground of rescision, and the judge below has amply secured the defendant, by decreeing that the contract should not be enforced, until the property is liberated from these charges.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs.

*Chapotin* for the plaintiff, *Preston* for the defendant.